IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Dr. Sheikh Dukuly;<br>Sekou AM Dukuly;<br>Ashton Homes LLC; and<br>Berkeley Heights Homes LLC<br>　　　　　　*Plaintiffs*,<br><br>　　*vs.*<br><br>City of New Hope, Minnesota<br>　　　　　　*Defendant*. | Case no. 23-CV-3351<br><br><br><br>**COMPLAINT**<br>**WITH JURY DEMAND** |

**COME NOW** Plaintiffs Dr. Sheikh and Sekou Dukuly and their two LLCs, by and through counsel Matt Kezhaya (# 0402193) with a complaint for damages under 42 USC § 1983 for an uncompensated taking; or a petition for mandamus to institute proper condemnation proceedings.

## JURISDICTION AND VENUE

1.　The Court has subject matter jurisdiction over the federal questions and supplemental jurisdiction over the state-law claim. 28 USC §§ 1331, 1367; 42 USC § 1983.

2.   The Court has general personal jurisdiction over the defendant because it is a municipal corporation in Minnesota. This suit arises from a municipal action, so Defendant does not have Eleventh Amendment immunity to the constitutional questions. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

3.   Venue properly lies in this Court because the actions complained of occurred in this District. 28 USC § 1391(b)(2).

## PARTIES

4.   The Dukuly Brothers are Minnesota residents who were divested of their complete economic interest in two licenses to operate two assisted living facilities at two separate parcels of real estate by non-judicial enforcement of a legislative ordinance. The two sets of property rights were directly held by Ashton Homes LLC and Berkeley Heights Homes LLC, respectively. The Dukuly Brothers jointly owned 100% of each LLC.

5.   The City of New Hope is a municipal corporation in Hennepin County. By council action, the City divested the Dukuly

Brothers from their complete economic interest in two licenses to operate an assisted living facility and, by the same city resolution, further excluded the Dukuly Brothers from leasing out any residential real estate withinin city limits for "at least" three years.

### FACTS COMMON TO ALL CLAIMS

6. Until on or about July 21, 2023, the Dukuly Brothers owned two parcels of real estate in New Hope, Minnesota:

   (a)   3957 Wisconsin Ave.; and

   (b)   3840 Boone Ave.

7. The Wisconsin parcel was owned through Berkeley Heights Homes LLC, in which the Dukuly Brothers held a 100% interest.

8. The Boone parcel was owned through Ashton Homes LLC, in which the Dukuly Brothers held a 100% interest.

9. Both parcels were improved with residential housing which the Dukuly Brothers used as assisted living facilities.

10. The Dukuly Brothers had three property interests in operating

the two assisted living facilities: (1) they had licenses conferred by the Minnesota commissioner of health;[1] (2) they had lease agreements with their residents; and (3) they had a contract with Hennepin County to provide them with residents in need of assisted living facility care. These three property interests resulted in profit streams which were inextricably intertwined with the operation of the two assisted living facilities at issue. *Cf. Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1017 (1992) ("For what is the land but the profits thereof?") (cleaned up) (quoting 1 E. Coke, Institutes, ch. 1, § 1 (1st Am. ed. 1812)).

11.   Issues with the City began in June 2021, at which time a vocal segment of the residents of New Hope lobbied the City Council at a public meeting to remove the Dukuly Brothers' politically undesirable residents.

12.   Initially, the City Council declined to acquiesce to the

---

[1] **Exhibit 1** is the license for the Wisconsin facility. **Exhibit 2** is the pre-hearing license for the Boone facility. **Exhibit 3** is the post-hearing reissued license for the Boone facility.

objecting residents' requests to oust the Dukuly Brothers' disabled residents, stating that it was a health commissioner issue.

13. The City Council encouraged the objecting residents to continue making emergency calls to create a record of their complaints about the Dukuly Brothers' residents.

14. Beginning on or around June 12, 2022, the City set out to revoke the Dukuly Brothers' right to operate their assisted living facilities through use of Ordinance § 3-31. **Exhibit 4**. The ordinance purports to allow the City to deprive the owner of residential real estate of the right to lease the property when the residents are alleged to have engaged in "disorderly behavior."

15. From June 12-30, 2022, the City issued three citations to residents of the Wisconsin facility. On information and belief, the citations were never the subject of judicial action.

16. On July 25, 2022, the City Council held a public hearing to determine whether it should revoke Berkely Heights Homes LLC's right to lease the land to residents of the Wisconsin facility.

17. Because the Dukuly Brothers "did not effectively disprove the actual incidents of disorderly behavior" alleged by the City, the City Council entered a city resolution that "The tenants of the Property must vacate it within 45 days;" Berkely Heights Homes LLC may not reapply for any rental permits for "at least 1 year;" and Sekou Dukuly may not have an ownership interest in any other entity which attempts to apply for a rental permit anywhere in the City "for at least 1 year." **Exhibit 5** ("Wisconsin Resolution").

18. It was impossible to comply with both the Wisconsin Resolution and State-level regulations for closing an assisted living facility. The State-level regulations required an administrative process which could not be completed within the 45 days allotted by the Wisconsin Resolution.

19. Because the Dukuly Brothers complied with the Wisconsin Resolution, the commissioner of health issued a $500 fine.

20. From April 17, 2022 to September 19, 2022, the City issued three citations to residents of the Boone facility. On information and

belief, the citations were never the subject of judicial action.

21. On October 24, 2022, the City Council held a public hearing to determine whether it should revoke Ashton Homes LLC's right to lease the Boone facility.

22. Because the Dukuly Brothers "did not effectively disprove the actual incidents of disorderly behavior" alleged by the City, the City Council entered a city resolution that "The tenants of the Property must vacate it within 45 days;" Ashton Homes LLC may not reapply for any rental permits for "at least 3 years;" and that neither of the Dukuly Brothers may have an ownership interest in any other entity which attempts to apply for a rental permit anywhere in the City "for at least 3 years." **Exhibit 6** (the "Boone Resolution").

23. After the City issued the Boone Resolution (Exhibit 6), the commissioner of health reissued the license to operate the Boone facility to make it clear that the Dukuly Brothers had a right to operate the facility (Exhibit 3).

24. Notwithstanding that the health commissioner reissued a

license for the Boone facility after the resolution, the City continued threatening enforcement of its resolution.

25. Because of the Wisconsin Resolution and the Boone Resolution, the Dukuly Brothers were completely deprived of the profit streams from operating their assisted living facilities. The profit streams from operating their assisted living facilities constituted approximately 85% of the two LLCs' operating income.

26. Because of the Wisconsin Resolution and the Boone Resolution, the Dukuly Brothers lost the rent stream from lease agreements.

27. Because of the Wisconsin Resolution and the Boone Resolution, the Dukuly Brothers were reasonably compelled to sell the two parcels of real estate at a loss.

28. Combined, the two resolutions cost the Dukuly Brothers $2,000,000.

## CAUSES OF ACTION

### Count 1:
### 42 USC § 1983 (Fourteenth amendment takings claim)

29.  The Fifth Amendment's taking clause is applicable to the States under the Fourteenth Amendment.

30.  Defendant is a "person" for § 1983 purposes. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).

31.  Under color of State law (*i.e.*, MSA § 412.221, subd. 32), and without just compensation, the City deprived the Dukuly Brothers of their property rights in the following:

   (a)  The licenses to operate the Boone and Wisconsin assisted living facilities;

   (b)  The profit streams from operating the Boone and Wisconsin assisted living facilities;

   (c)  Their fee-simple titled right to lease the land; and

   (d)  Their contract rights to rent from leasing the land.

32.  The two resolutions effectuated a complete deprivation of

both the State-licensed right to operate the two assisted living facilities and the resulting profit streams from the lease agreements thereunder. Extinguishing the complete economic benefit of property is a taking. *Lucas v. S.C. Coastal Council*, 505 U.S. 1003 (1992).

33. The regulation also deprived the Dukuly Brothers of their fee-simple ownership rights to lease the land. *See KCP Hastings, LLC v. Cnty. of Dakota*, No. 19HA-CV-11-2713, 2016 WL 7638310, at *10 (Minn. Tax Dec. 29, 2016) ("Fee-simple ownership carries with it various rights, such as … the right to lease an interest in the property.") A takings analysis applies to rental permitting licenses and contracts. *Zeman v. City of Minneapolis*, 552 N.W.2d 548 (Minn. 1996); *Lynch v. United States*, 292 U.S. 571, 579 (1934).

34. The City's prohibition against the Dukuly Brother's right to lease their land was a regulatory taking. A regulatory taking occurs under a balancing test of three factors:

> (1) the "economic impact of the regulation on the claimant;"

> (2) "the extent to which the regulation has interfered with distinct investment-backed expectations;" and
>
> (3) the "character of the governmental action."

*Heights Apartments, LLC v. Walz*, 30 F.4th 720, 734 (8th Cir. 2022) (citing *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). The first two factors are the main determinants, and the third may be relevant. *Id.* The question is whether justice and fairness require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons. *Woodstone Ltd. P'ship v. City of Saint Paul, Minnesota*, No. 22-CV-1589 (NEB/DLM), 2023 WL 3586077, at *16 (D. Minn. May 22, 2023) (citing *Penn Central*, above).

35. Revocation of a rental permit satisfies the first two *Penn Central* prongs. *Zeman*, 552 N.W.2d at 553-554. The Dukuly Brothers, through their two LLCs, purchased the real estate and improved the same for the contemplated purpose of operating assisted living facilities. The resolutions prevented the continued operation of two

going concerns. As correctly held in *Zelman*, the City effectuated a taking by depriving the Dukuly Brothers of their profit streams arising from the operation of the two assisted living facilities.

36.    The character of the governmental action also indicates a taking because the resolutions singled out the Dukuly Brothers to address a perceived societal problem with their politically undesirable residents. *Lamplighter Vill. Apartments LLP v. City of St. Paul*, 534 F. Supp. 3d 1029, 1035 (D. Minn. 2021). In addressing the third *Penn Central* prong, the *Zeman* Court errantly held that a valid exercise of police powers does not effectuate a taking. 552 N.W.2d at 553. That approach is invalid. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 548 (2005); *Wensmann Realty, Inc. v. City of Eagan*, 734 N.W.2d 623, 639 n. 13 (Minn. 2007). A takings clause analysis presumes the validity of the government action because an invalid exercise of government authority would moot the takings analysis before it begins. *Ibid.*

37.    Further, the justification for the ordinance sounds under a taking jurisprudence. The public policy justification for the ordinance

is threefold: (1) to prevent real estate becoming "a nuisance to the neighborhood;" (2) to avoid "blight and deterioration;" and (3) to avoid circumstances in which real estate "creates a disincentive to reinvestment in the community." Exhibit 4, at Ordinance § 3-31(b). Each of these three justifications are State-law grounds for a city to exercise its eminent domain powers. MSA §§ 117.075, subd. 1(b); see also MSA § 117.025, subd. 11(3).

38.  Rather than exercise its eminent domain proceedings, however, the City encouraged the complaining residents to continue making emergency calls to later justify taking the Dukuly Brothers' right to operate their two assisted living facilities, without proper proceedings, and without just compensation.

39.  Based on the foregoing, the City took the Dukuly Brothers' above property rights without just compensation. The remedy at law is a money judgment in an amount to be determined at trial.

## Count 2:
## Petition for mandamus for inverse condemnation

40. Pleading in the alternative, the Dukuly Brothers are entitled to mandamus relief requiring that the City undertake proper condemnation proceedings. *Nolan & Nolan v. City of Eagan*, 673 N.W.2d 487, 493 (Minn. Ct. App. 2003).

41. The Minnesota Constitution provides broader relief than the federal Takings Clause. Compare Minn. Const. art. I, § 13 ("Private property shall not be *taken, destroyed or damaged* for public use without just compensation") (emphasis added) with U.S. Const. amend V ("nor shall private property be *taken* for public use, without just compensation") (emphasis added).

42. Under Minnesota law, citizens are entitled to just compensation "for losses related to property rights incurred because of state actions." *Johnson v. City of Minneapolis*, 667 N.W.2d 109, 115 (Minn. 2003). Minnesota takings jurisprudence deviates from the *Penn Central* factors when the state action is "specifically directed against a particular parcel." *Id.*

43. The City specifically directed its actions against the Dukuly Brothers' property rights. See Exhibit 5 and Exhibit 6.

44. The City had an official duty clearly imposed by the Minnesota Constitution to pay just compensation for taking, destroying, or damaging the Dukuly Brothers' property rights:

    (a)    to operate assisted living facilities at the Boone parcel and Wisconsin parcel;

    (b)    to receive rents from the lessee-residents; and

    (c)    to lease their land as they see fit.

45. The City failed to pay just compensation despite taking, damaging, or destroying the Dukuly Brothers' property rights.

46. Because the City failed to pay just compensation, the Dukuly Brothers suffered a public wrong specifically injurious to them, in that they bore the sole economic burden of remediating a public nuisance, avoiding blight or deterioration, or otherwise creating an incentive to reinvest in the community.

47. Legal remedies are necessarily inadequate if a taking occurred. *Nolan*, 673 N.W.2d at 494.

48. Based on the foregoing, the City took, damaged, or destroyed the Dukuly Brothers' property rights without just compensation. Under Minnesota law, the proper remedy is mandamus to institute condemnation proceedings. *Nolan*, above.

## JURY DEMAND

49. Plaintiffs demand trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE** Plaintiffs pray for a finding that the City violated the Dukuly Brothers' rights to just compensation and either order the City to pay a monetary judgment to the Dukuly Brothers in an amount to be determined at trial, or direct the City to institute proper condemnation proceedings; for costs, attorneys fees, and lawful interest at applicable rates; and for all other relief to which they are entitled.

Respectfully submitted on November 1, 2023,

By: /s/ *Matt Kezhaya*
Matt Kezhaya (# 0402193)
KEZHAYA LAW PLC
150 S. Fifth St., Suite 1850
Minneapolis, MN 55402
phone: (479) 431-6112
email: matt@kezhaya.law

## Exhibit list

1. Wisconsin License

2. Boone License (pre-hearing)

3. Boone License (post-hearing)

4. New Hope Ordinance § 3-31 (highlighting in original)

5. Wisconsin Resolution

6. Boone Resolution